UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                 :

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | |
| | : |
| Plaintiff-Applicant, | Adv. Pro. No. 08-1789 (BRL) |
| | : |
| -v- | SIPA LIQUIDATION |
| | : |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | (Substantively Consolidated) |
| | : |
| Defendant. | |

-------------------------------------------------------------- X

In re BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                             Debtor.

-------------------------------------------------------------- X

IRVING H. PICARD, Trustee for the Liquidation
of Bernard L. Madoff Investment Securities LLC,

                             Plaintiff,            :       Adv. Pro. No. 10-05342 (BRL)

                                -v-           :       11 Civ. 8629 (JPO)

MAXAM ABSOLUTE RETURN FUND, L.P.;   :      <u>MEMORANDUM</u>
MAXAM ABSOLUTE RETURN FUND, LTD.;  :      <u>AND ORDER</u>
MAXAM CAPITAL MANAGEMENT LLC;     :
MAXAM CAPITAL GP LLC; SANDRA L.       :
MANZKE REVOCABLE TRUST; SANDRA L.  :
MANZKE, AS TRUSTEE AND               :
INDIVIDUALLY; SUZANNE HAMMOND;     :
WALKER MANZKE; AND APRIL BUKOFSER :
MANZKE;                                 :

                           Defendants.    :

-------------------------------------------------------------- X

J. PAUL OETKEN, District Judge:

In the adversary proceeding below, Irving H. Picard (the "Trustee"), as Trustee for the substantively consolidated Securities Investor Protection Act ("SIPA")[1] liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") and Bernard L. Madoff, brought an application seeking injunctive relief against MAXAM Absolute Return Fund LTD ("Maxam Limited" or "Appellant").  The Bankruptcy Court granted that application in an October 12, 2011 order. (Order Pursuant to Sections 362(a) and 105(a) of the Bankruptcy Code Enforcing the Automatic Stay, Stay Orders, and SIPA and Granting Trustee's Application for an Injunction (the "Order") (Dkt. No. 1-1)).  Before the Court is an appeal (Dkt. No. 1) by Maxam Limited from that Order. For the reasons stated below, the Order of the Bankruptcy Court is affirmed.

## I.    Background[2]

On December 8, 2010, the Trustee filed a complaint (the "Complaint") against Appellant and several related funds, "seeking the avoidance of certain transfers, including the recovery of subsequent transfers to Maxam Limited."  *Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, 460 B.R. 106, 113 (Bankr. S.D.N.Y. 2011).  The Complaint alleges that, between 2006 and 2008, nearly $100 million was transferred from BLMIS to Maxam Absolute Return Fund, L.P. ("Maxam Fund") in the form of withdrawals and that, during the ninety days prior to December 11, 2008 (the "Filing Date"), three transfers totaling approximately $25 million were made to Maxam Fund (the "Preference Period Transfers").  The Complaint further alleges that some or all of the Preference Period Transfers were subsequently transferred to Maxam Limited. The Trustee seeks return of these funds.

---

[1] 15 U.S.C. §§ 78aaa *et seq.*  References to sections of SIPA hereinafter replace "15 U.S.C." with "SIPA."

[2] The facts contained in this Background section are not disputed and are, unless otherwise noted, drawn from the Background section of the Bankruptcy Court's Bench Memorandum Determining Trustee's Motion for Entry of an Injunction.  *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, 460 B.R. 106, 113 (Bankr. S.D.N.Y. 2011).

On July 11, 2011, Maxam Limited filed an answer to the Trustee's Complaint.  On or about the same day, Maxam Limited filed an action in the Grand Court of the Cayman Islands (the "Cayman Action") seeking (1) a declaration that Maxam Limited is not liable to the Trustee for either (a) the $25 million Maxam Limited received from Maxam Fund within the period ninety days prior to the Filing Date or (b) any amounts received from Maxam Fund within the period two years prior to the Filing Date in excess of the $25 million; and (2) costs and any other relief deemed proper by the court.  Maxam Limited represents that it was incorporated under the laws of the Cayman Islands and maintains its principal place of business there, though all of its assets are in the United States.  (Declaration of Carrie A. Tendler dated December 19, 2011 (Dkt. Nos. 10-5, Ex. J at iv; 10-6, Ex. J at 1; 10-10, ¶ 4).)

The Trustee's Application to the Bankruptcy Court followed.  On October 12, 2011, the Bankruptcy Court issued its Order, which deemed the Cayman Action and any relief derived from it void *ab initio*.  The Order also, among other things, enjoined Maxam Limited and its agents from participating in the Cayman Action and from filing any further proceedings against the Trustee, the BLMIS estate, or the estate's assets "in any domestic or extraterritorial jurisdiction without first obtaining leave of [the Bankruptcy Court]."  (Order at 3.)  The Order further directed Maxam Limited to dismiss the Cayman Action as well as any other claims and requests for declaratory judgment or other relief against the Trustee or BLMIS in the Grand Court of the Cayman Islands.

The Bankruptcy Court explained its reasoning for the Order in a separate bench memorandum.  *See Sec. Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, 460 B.R. 106 (Bankr. S.D.N.Y. 2011).  As stated therein, the injunctive portions of the Order were authorized by 11 U.S.C. § 105(a), which permits a bankruptcy court to "issue any order, process, or

judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code[3]]."
*Id.* at 120 (quoting 11 U.S.C. § 105(a)) (modification altered).  The Bankruptcy Court concluded
that the Cayman Action violated (1) the automatic stay established in bankruptcy cases by 11
U.S.C. § 362(a) and applied in SIPA cases by SIPA § 78fff(b); (2) at least one stay order of this
Court in connection with the ongoing SEC litigation related to this matter; (3) the *Barton*
Doctrine established in *Barton v. Barbour*, 104 U.S. 126 (1881), which forbids a petitioning
party from suing a court-appointed receiver without leave of court; and (4) sections of SIPA,
including § 78eee(b)(2)(A)(i)-(ii), providing that the Bankruptcy Court has "exclusive
jurisdiction of [BLMIS] and its property wherever located (including property located outside the
territorial limits of [the Bankruptcy Court] . . . [and] of any suit against the trustee with respect to
a liquidation proceeding . . . ."  *See* 460 B.R. at 113-17.

     Maxam Limited filed this appeal from the Order on November 29, 2011.  (Dkt. No. 1.)

## II.  Discussion

     In reviewing final decisions of bankruptcy courts, a district court acts as an appellate
court.  *See In re Sanshoe Worldwide Corp.*, 993 F.2d 300, 305 (2d Cir. 1993).  Findings of fact
are reviewed for clear error.  Fed. R. Bankr. P. 8013 ("Findings of fact . . . shall not be set aside
unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court
to judge the credibility of the witnesses."); *accord In re Cody, Inc.*, 338 F.3d 89, 94 (2d Cir.
2003).  Legal conclusions are reviewed de novo.  *See In re Adelphia Commc'ns Corp.*, 298 B.R.
49, 52 (S.D.N.Y. 2003) (citing *In re United States Lines, Inc.*, 197 F.3d 631, 640-41 (2d Cir.
1999)).

     A decision to grant or deny an injunction is reviewed for abuse of discretion.  *See Nevada
Power Co. v. Calpine Corp. (In re Calpine Corp.)*, 365 B.R. 401, 407 (S.D.N.Y. 2007).  The

---

[3] In this opinion, 11 U.S.C. §§ 101 *et seq*. is referred to as the Bankruptcy Code.

extension or denial of comity is also reviewed for abuse of discretion.  *See Finanz AG Zurich v. Banco Economico S.A.*, 192 F.3d 240, 246 (2d Cir. 1999).

Appellant Maxam Limited argues that the Bankruptcy Court's Order should be reversed because the automatic stay, the stay orders, the *Barton* Doctrine, the relevant sections of SIPA, and the Bankruptcy Court's injunctive power all lack extraterritorial effect.  (Appellant's Br. (Dkt. No. 6).)  Appellant also argues that the Order should be reversed in the interests of comity toward the courts of the Cayman Islands.  (*Id.*)  The Court concludes that the automatic stay and the Bankruptcy Court's injunctive power have extraterritorial effect, that the Cayman Action violates the automatic stay, and that the Bankruptcy Court was not restricted by interests of comity in this case.  Accordingly, the Order must be affirmed.[4]

### A.       Extraterritoriality of the Automatic Stay

Appellant argues that the Bankruptcy Court "erred in applying the automatic stay extraterritorially against MAXAM Limited" because the automatic stay lacks extraterritorial effect.  (*Id.* at 21-22.)  As discussed below, federal statutes, case law, and policy considerations all support the conclusion that the automatic stay does have extraterritorial reach.  Appellant's arguments to the contrary, addressed below in a separate section, are unavailing.

### 1.       Authority for the Automatic Stay and its Extraterritorial Reach

Under § 541(a) of the Bankruptcy Code, commencement of a bankruptcy action creates a worldwide estate of all of the legal or equitable interests, "wherever located," held by the debtor at the time of that commencement.  *See Nakash v. Zur (In re Nakash)*, 190 B.R. 763, 768 (Bankr. S.D.N.Y. 1996) ("[L]egislative history makes clear Congress' intent that 'wherever located' be broadly construed to include property located in and outside of the U.S.") (citation omitted)).  In

---

[4] Because the grounds stated above are sufficient to support the Order, it is not necessary for this Court to reach Appellant's additional arguments concerning the extraterritorial effect of the stay orders, the *Barton* Doctrine, and SIPA.

a case before a bankruptcy court, the bankruptcy court has *in rem* jurisdiction over all estate property, including claims and causes of action to recover estate property, regardless of the location of the property or claim.  *Jackson v. Novak (In re Jackson)*, 593 F.3d 171, 176 (2d Cir. 2010).

The Bankruptcy Code's automatic stay, "applicable to all entities," protects the debtor's property and the bankruptcy court's jurisdiction by barring "any act to obtain possession of property of the estate . . . or to exercise control over property of the estate."  11 U.S.C. § 362(a). "The purpose of the stay is to give the debtor a breathing spell from litigation and collection activities."  *In re Gold & Honey, Ltd.*, 410 B.R. 357, 369 (Bankr. E.D.N.Y. 2009).  In other words, "[t]he stay exists to protect the estate from a chaotic and uncontrolled scramble for the Debtor's assets in a variety of uncoordinated proceedings in different courts."  *In re Nakash*, 190 B.R. at 768 (internal quotation marks and citation omitted).

In Chapter 11 cases, the automatic stay must prohibit litigation to obtain possession or control of the estate's property "regardless of where such litigation is commenced."  *In re JSC BTA Bank*, 434 B.R. 334, 345 (Bankr. S.D.N.Y. 2010).  Thus, as numerous judicial opinions explain, "the automatic stay applies extraterritorially."  *In re McLean Industries, Inc.*, 74 B.R. 589, 601 (Bankr. S.D.N.Y. 1987).[5]  In recognizing the extraterritorial reach of the automatic stay, Judge Posner, writing for the Seventh Circuit, has explained that "[t]he efficacy of the bankruptcy proceeding depends on the court's ability to control and marshal the assets of the

---

[5] *See also Lykes Bros. S.S. Co. v. Hanseatic Marine Serv. (In re Lykes Bros. S.S. Co.)*, 207 B.R. 282, 287 (Bankr. M.D. Fla. 1997) ("[T]he automatic stay imposed by 11 U.S.C. § 362 extends beyond the territorial boundaries of the United States."); *In re Yukos Oil Co.*, 321 B.R. 396, 406 (Bankr. S.D. Tex. 2005) (Congress's "broad grant of jurisdiction [to bankruptcy courts] extends to extraterritorial application of the Bankruptcy Code as it applies to property of the bankruptcy estate." (citation omitted)); *In re McLean Indus.*, 68 B.R. 690, 694 (Bankr. S.D.N.Y. 1986) ("[I]n causing the issuance of the Hong Kong and Singapore warrants, the defendant . . . disturbed the debtor's possession of its property in violation of 11 U.S.C. § 362(a)(3).");  *In re Artimm*, 278 B.R. 832, 841 (Bankr. C.D. Cal. 2002) ("The United States cannot expect that foreign courts will recognize the extraterritorial reach of its own automatic stay under § 362 if its courts do not equally recognize the impact in the United States of a foreign automatic stay.").

debtor wherever located (see § 541(a)) . . . ." *Underwood v. Hilliard (In re Rimsat, Ltd.)*, 98 F.3d 956, 961 (7th Cir. 1996).[6]

It is important to note, however, that none of these cases stands for the notion that a United States court can exercise control over a foreign court.  Rather, a bankruptcy court can enforce the automatic stay extraterritorially only against entities over which it has *in personam* jurisdiction.

> [T]he extraterritorial jurisdiction of the United States courts for these purposes is *in personam* rather than *in rem*.  If a creditor causes property of a title 11 estate to be seized in a foreign country, that creditor has violated the automatic stay.  Whether that creditor can be punished, however, is a function of that creditor's amenability to United States process.

*Sinatra v. Gucci (In re Gucci)*, 309 B.R. 679, 683-84 (S.D.N.Y. 2004) (quoting 1 King, et al., *Collier on Bankruptcy* 3.01[5], at 3-32 to 3-33 (15th ed. rev. 2003)); *see also* David P. Stromes, *Note: The Extraterritorial Reach of the Bankruptcy Code's Automatic Stay: Theory vs. Practice*, 33 Brooklyn J. Int'l L. 277, 284 (2007) ("[I]f foreign creditors violate the automatic stay, U.S. bankruptcy courts cannot protect the debtor's assets unless the courts can exercise *in personam* jurisdiction over the violating entities.").

### 2.     Appellant's Arguments Against Extraterritoriality of the Automatic Stay

Maxam Limited argues that the automatic stay lacks extraterritorial effect because of the presumption established in *E.E.O.C. v. Arabian-American Oil Co.*, 499 U.S. 244 (1991), that congressional statutes do not apply extraterritorially unless a contrary intent of Congress appears. That case requires courts to "look to see whether language in the relevant [a]ct gives any

---

[6] The Seventh Circuit's reasoning is relevant here, though the facts in *Rimsat* were different.  There, the court held that the automatic stay prohibited foreign litigation by "a U.S. citizen to prevent his interfering with a U.S. bankruptcy proceeding in which the debtor is a corporation headquartered in the United States."  *Rimsat*, 98 F.3d at 961.  Though Maxam Limited is not a U.S. citizen, it is subject to U.S. jurisdiction, 460 B.R. at 116-20, and its interference with the U.S. bankruptcy of U.S.-based BLMIS violates the automatic stay for the same reasons discussed in *Rimsat*.

indication of a congressional purpose to extend its coverage beyond places over which the United States has sovereignty or has some measure of legislative control." *E.E.O.C.*, 499 U.S. at 248 (internal quotation marks and brackets omitted).  However, this "presumption is generally not applied where the failure to extend the scope of the statute to a foreign setting will result in adverse effects within the United States." *H.K. & Shanghai Banking Corp. v. Simon (In re Simon)*, 153 F.3d 991, 995 (9th Cir. 1998) (quoting *Environmental Defense Fund, Inc. v. Massey*, 986 F.2d 528, 531 (D.C. Cir. 1993)).  The presumption against extraterritoriality is also "not applicable when the regulated conduct is 'intended to, and results in, substantial effects within the United States.'"  *Id.* (quoting *Laker Airways, Ltd. v. Sabena Belgian World Airlines*, 731 F.2d 909, 925 (D.C. Cir. 1982)).

In the bankruptcy context, Congress *has* expressed its intent that bankruptcy courts (by delegation from district courts) are to have jurisdiction over a debtor's estate of "property, *wherever located* and by whomever held."  11 U.S.C. § 541(a) (emphasis added); 28 U.S.C. § 1334(e); 28 U.S.C. § 157(a); 28 U.S.C. § 151.  Because the automatic stay is key to protecting a bankruptcy court's jurisdiction, the language Congress used in § 541(a) is, as the Seventh Circuit has noted, evidence of congressional intent that the automatic stay would apply extraterritorially. *In re Rimsat*, 98 F.3d at 961.

Maxam Limited also points to *AW Treuhand Wirtschaftsprufungsgesellschaft v. Peregrine Sys. (In re Peregrine Sys.)*, No. 04-1325, 2005 U.S. Dist. LEXIS 21707 (D. Del. Sept. 29, 2005), in which the District Court in Delaware reversed a bankruptcy court's extraterritorial application of the automatic stay.  In that case, several debtors (collectively, "Peregrine") filed a Chapter 11 petition in Delaware and, the following day, filed a complaint in the Superior Court of the State of California, asserting claims for professional malpractice, fraud, and breach of contract against Arthur Andersen LLP, Arthur Andersen Worldwide S.C., Daniel Stulac, and

Arthur Andersen Wirtschaftsprufungsgesellschaft Steuerberatungsgesellschaft mbH ("AAWS").

Approximately three months after the Chapter 11 filing, AAWS filed suit against Peregrine in a

German court, seeking a declaration of non-liability.  Three months after that, AAWS (while

preserving its jurisdictional defenses) brought a motion in the bankruptcy court for a

determination that the automatic stay established by 11 U.S.C. § 362(a) did not apply to the

German action.

On appeal, the District Court for the District of Delaware held that the automatic stay

found in 11 U.S.C. § 362(a)(1) did not apply to AAWS's German action because that section

applies only to "a judicial, administrative, or other action or proceeding against the debtor that

was or could have been commenced before the [bankruptcy case], or to recover a claim against

the debtor that arose before the [bankruptcy case]."  11 U.S.C. § 362(a)(1); *Peregrine*, 2005 U.S.

Dist. LEXIS 21707, at *8-11.  The district court in *Peregrine* held that AAWS's German action

presented no "claims" as defined by 11 U.S.C. § 101(5)(A) (a "right to payment . . .") but only

defenses to the post-petition California action—defenses which could not have been filed pre-

petition.  *Peregrine*, 2005 U.S. Dist. LEXIS 21707, at *8-11.  The *Peregrine* court did not hold

that the automatic stay lacks extraterritorial effect[7]; it held merely that the facts of that case did

not fall within the ambit of § 362(a)(1).  Nor did *Peregrine* discuss § 362(a)(3), presumably

because that section applies to "act[s] to obtain possession of property of the estate or of property

from the estate or to exercise control over property of the estate," 11 U.S.C. § 362(a)(3), and no

such acts were found in *Peregrine*.

In contrast, this case is about 11 U.S.C. § 362(a)(3) because, here, the question is whether

Maxam Limited has performed an "act to . . . exercise control over property of the estate."

---

[7] Indeed, the *Peregrine* court suggested that the automatic stay might have applied extraterritorially in that case if a true "claim" were at issue.  2005 U.S. Dist. LEXIS 21707, at *8.

Because *Peregrine* did not concern that section, *Peregrine* does not inform the resolution of this case.[8]

Rather, this Court follows the many other courts discussed above that *have* addressed the extraterritoriality of the automatic stay, concluding that it protects a bankruptcy court's *in rem* jurisdiction extraterritorially by way of *in personam* jurisdiction over those who would take actions prohibited by the stay. Here, Maxam Limited's Cayman Action seeks a declaratory judgment concerning the merits of the Trustee's claim (which is, itself, property of the BLMIS estate) to funds transferred during the preference period *as well as costs*. The Cayman Action constitutes an act by Maxam Limited "to exercise control over property of the estate" in violation of 11 U.S.C. § 362(a)(3).

The Trustee correctly notes that Maxam Limited "does not dispute that, had its lawsuit been filed in the United States, it would have violated the automatic stay." (Appellee's Br. (Dkt. No. 12) at 2.) Maxam Limited's argument that the automatic stay does not bar the Cayman Action depends entirely on the asserted lack of extraterritorial effect of the automatic stay. Because the automatic stay does apply extraterritorially, Maxam Limited violated the automatic stay by filing the Cayman Action.

### B.      Extraterritoriality of the Bankruptcy Court's Injunctive Power

Under 11 U.S.C. § 105(a), a bankruptcy court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." Maxam Limited argues that the Bankruptcy Court's Order should be reversed because this injunctive

---

[8] There are additional reasons that *Peregrine* does not control this case. Most notably, AAWS had "formally preserved its jurisdictional defenses and ha[d] never submitted itself to the claims process, either directly or indirectly." *Peregrine*, 2005 U.S. Dist. LEXIS 21707, at *4 n.1. Again, *in personam* jurisdiction over an entity is necessary to extraterritorial enforcement of the automatic stay since American courts do not control foreign courts. *Sinatra v. Gucci (In re Gucci)*, 309 B.R. 679, 683-84 (S.D.N.Y. 2004). Here, however, the *in personam* jurisdiction of the Bankruptcy Court and this Court over Maxam Limited is undisputed.

authority does not empower the Bankruptcy Court to issue an order with extraterritorial effect. (Appellant's Br. at 17-18.)

Appellant essentially rehashes its argument discussed above that the presumption against extraterritoriality should control, noting that 11 U.S.C. § 105(a), like the automatic stay, does not explicitly establish its extraterritorial effect vis-à-vis a non-debtor.  (Appellant's Br. at 17-18.)

In fact, bankruptcy courts have previously utilized § 105(a) to enjoin extraterritorial violations of the automatic stay.  *See, e.g., In re Lykes Bros. S.S. Co.*, 191 B.R. 935, 936 (Bankr. M.D. Fla. 1995) (enjoining "all creditors which are subject to the personal jurisdiction of this Court, whether citizens of the United States or foreign entities . . ." from transferring claims to other foreign entities not subject to the personal jurisdiction of the bankruptcy court); *cf. In re Lykes Bros. S.S. Co. v. Hanseatic Marine Serv.*, 207 B.R. 282, 288 (Bankr. M.D. Fla. 1997) (enjoining foreign defendants from bringing foreign action under Federal Rule of Civil Procedure 65, which also includes no explicit grant of extraterritorial authority).

As discussed above, Congress expressed its intent in statute that bankruptcy courts are to have jurisdiction over a bankruptcy estate's "property, *wherever located* and by whomever held." 11 U.S.C. § 541(a) (emphasis added); 28 U.S.C. § 1334(e); 28 U.S.C. § 157(a); 28 U.S.C. § 151; *see also In re Rimsat*, 98 F.3d at 961 ("The efficacy of the bankruptcy proceeding depends on the court's ability to control and marshal the assets of the debtor wherever located (see § 541(a) . . . .").  Just as this congressional intent expressed in federal statute establishes the extraterritoriality of the automatic stay, the same congressional intent establishes the extraterritoriality of the Bankruptcy Court's injunctive power to enforce the Bankruptcy Code under § 105(a).

Appellant adds that § 105(a) "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law."  (Appellant's Br. at 17

(quoting *Solow v. Kalikow (In re Kalikow)*, 602 F.3d 82, 96 (2d Cir. 2010)).)  This maxim is

irrelevant here because the Bankruptcy Court created no substantive right for anyone in this case,

and Appellant makes no argument to the contrary.  Rather, as the Bankruptcy Court correctly

noted, "bankruptcy courts are empowered to utilize their equitable powers under section 105

where appropriate 'to facilitate the implementation of other Bankruptcy Code provisions.'"  460

B.R. at 120 (quoting *In re Kalikow*, 602 F.3d at 97); *see also Johns-Manville Corp. v. Colorado*

*Ins. Guar. Corp. (In re Johns-Manville Corp.)*, 91 B.R. 225, 228 (Bankr. S.D.N.Y. 1988)

(holding that a bankruptcy judge may, under § 105, "enjoin proceedings in other courts when it is

satisfied that such a proceeding would defeat or impair its jurisdiction with respect to a case

before it." (citation omitted)).

 Accordingly, the Bankruptcy Court had the power to issue the injunctive portions of its

Order.

## C. Interests of Comity

 Appellant Maxam Limited focuses much of its argument for the Order's reversal on the

interests of comity.  The Supreme Court has explained the contours of comity in the United

States as follows:

> 'Comity,' in the legal sense, is neither a matter of absolute obligation, on the one
> hand, nor of mere courtesy and good will upon the other.  But it is the recognition
> which one nation allows within its territory to the legislative, executive or judicial
> acts of another nation, having due regard both to the international duty and
> convenience, and to the rights of its own citizens, or of other persons who are
> under the protection of its laws.

*Hilton v. Guyot*, 159 U.S. 113, 163-64 (1895).

 In *China Trade & Development Corp. v. M.V. Choong Yong*, 837 F.2d 33 (2d. Cir. 1987),

the Second Circuit adopted a multi-factor test to determine whether a district court's injunction

against a foreign suit properly accorded with interests of international comity.  The court there

adopted "two threshold requirements for such an injunction: (1) the parties must be the same in both matters, and (2) resolution of the case before the enjoining court must be dispositive of the action to be enjoined." *China Trade*, 837 F.2d at 35-36.

> When these threshold requirements are met, five factors are suggested in determining whether the foregoing action should be enjoined: (1) frustration of a policy in the enjoining forum; (2) the foreign action would be vexatious; (3) a threat to the issuing court's in rem or quasi in rem jurisdiction; (4) the proceedings in the other forum prejudice other equitable considerations; or (5) adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment.

*Id.* (citation omitted).  Applying these factors, the *China Trade* court held that the district court there had erred in enjoining a (non-bankruptcy) lawsuit in Korea because the foreign suit did not implicate the most important of the relevant factors: threats to an American court's jurisdiction and to important American public policies.  *Id.* at 36-37.

The Bankruptcy Court here considered the comity arguments based on *China Trade* and determined that,

> given that the foreign proceeding in *China Trade* did not violate any law of the United States or interfere with the exclusive jurisdiction of a U.S. court, this Court finds the comity-based *China Trade* factors inapplicable to the instant proceeding. Maxam Limited cannot use notions of international comity to undermine this Court's exclusive jurisdiction and interfere with the administration of the estate.

460 B.R. at 122 (citing *In re Rimsat*, 98 F.3d at 963 ("Comity is a doctrine of adjustment, not a mandate for inaction.")).

In this appeal, Maxam Limited argues that *China Trade* should control in light of the Third Circuit's holding in *Stonington Partners v. Lernout & Hauspie Speech Prods. N.V.*, 310 F.3d 118 (3d Cir. 2002), which reversed, on grounds of comity, a bankruptcy court's injunction against a parallel proceeding in Belgium.  However, in *Stonington*, the Third Circuit stressed the importance of the fact that, there, the debtor had initiated parallel bankruptcy proceedings in the United States and Belgium, making the proceedings "parallel in the normal sense of the term."

*Id.* at 128 & n.8.  The actions here are not "parallel in the normal sense of the term" because only one of them is a bankruptcy proceeding brought by the Trustee; the other is a declaratory action brought by the Appellant creditor in a different forum.

The Trustee here correctly notes further that the *claims* at issue in *Stonington* (both in the United States and Belgium) were claims of a creditor and were therefore not "property of the debtor's estate" under § 541(a) and the automatic stay.  (Appellee's Br. at 27.)  Since the Trustee's action below presented claims of the BLMIS estate while the Cayman Action, concerning claims of the estate, was brought by a creditor in a foreign forum where the BLMIS had not filed a parallel proceeding, *Stonington* appears inapposite.

Moreover, the Bankruptcy Court held that, "[e]ven assuming every injunction affecting a foreign proceeding must meet the *China Trade* factors, enjoining Maxam Limited from continuing the Cayman Action is warranted thereunder."  460 B.R. at 122.  The court below held that the two threshold "factors are obviously satisfied here; both suits involve the Trustee and Maxam Limited, and resolution of the Trustee's action in this Court is dispositive of the Cayman Action which seeks a determination of non-liability in the Trustee's action."  *Id.*

With regard to the additional *China Trade* factors, the Bankruptcy Court then cited (a) the Cayman Action's threat "to erode the strong public policies underlying SIPA, namely, protecting investors and their faith in the securities market by expeditiously returning customer funds to investors"; (b) the vexatiousness of the Cayman Action in threatening to require double litigation of any issues raised therein; (c) the Cayman Action's threat to the Bankruptcy Court's exclusive *in rem* jurisdiction over the worldwide estate of BLMIS assets; and (d) the "delay, inconvenience, expense, and inconsistency" threatened by the Cayman Action.  *Id.* at 122-23.

The Bankruptcy Court's application of the *China Trade* factors, reviewed *de novo*, is sound.  It is worth emphasizing that "SIPA serves dual purposes: to protect investors, and to

protect the securities market as a whole." *In re Bernard L. Madoff Inv. Sec. LLC*, 654 F.3d 229, 235 (2d Cir. 2011).  Allowing the Cayman Action to proceed would indeed raise doubts about the reliability of America's judiciary in responding to bankruptcies in the American securities markets.  And the Cayman Action would indeed vexatiously require the Trustee to relitigate claims raised in the adversary proceeding below.  As discussed above vis-à-vis the automatic stay, the Cayman Action does threaten the Bankruptcy Court's exclusive *in rem* jurisdiction over the worldwide estate of BLMIS assets.  The Cayman Action certainly threatens inconsistency with the adversary proceeding—indeed, it is difficult to imagine why Maxam Limited would have brought the Cayman Action except to seek a more favorable result than it could secure in the Bankruptcy Court.  Finally, the Cayman Action would cause extra inconvenience and expense for the Trustee in double litigation, whether or not it also causes delay for the Bankruptcy Court.[9]

The Bankruptcy Court exhibited appropriate restraint in not deciding whether *China Trade* controls this case since the injunction at issue would be appropriate whether *China Trade* is applicable or not.  This Court does likewise.

## III.    Conclusion

As stated above, the Order *sub judice* represents an appropriate use of the Bankruptcy Court's injunctive authority under § 105(a) because the Cayman Action violated the automatic stay and because the Second Circuit's holding in *China Trade* does not constrain the Bankruptcy

---

[9] Maxam Limited's counterarguments on these points are unavailing.  It first argues that the Order does not satisfy *China Trade*'s threshold requirements because neither the adversary proceeding here nor the Cayman Action would be automatically dispositive of the other and that, rather, the effect of each would depend on the comity extended by the other sovereign.  (Appellant's Br. at 11-12.)  This argument is spurious.  The issues raised in the Cayman Action are identical to issues raised in the adversary proceeding below.  Maxam Limited cannot negate the Bankruptcy Court's conclusion that "resolution of the Trustee's action . . . is dispositive of the Cayman Action which seeks a determination of non-liability in the Trustee's action." 460 B.R. at 122.  The Appellant proceeds with other arguments that, for reasons stated above, fare no better: that the Cayman Action does not threaten the Bankruptcy Court's exclusive jurisdiction; that it does not threaten important public policies of the United States; that it will not cause delay or inconvenience in the adversary proceeding; and that it is not so vexatious as to warrant an injunction.  (Appellant's Br. at 12-17.)

Court from exercising its authority here.  As such, it is not necessary for the Court to give additional consideration to Appellant's arguments concerning the extraterritorial effect of the stay orders, the *Barton* Doctrine, and SIPA.

Accordingly, the October 12, 2011 Order of the Bankruptcy Court is AFFIRMED.


SO ORDERED.

Dated: New York, New York
        May 4, 2012

_____
J. PAUL OETKEN
United States District Judge